UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

IN THE MATTER OF THE COMPLAINT
OF DEVILS HOLE JETBOAT, LLC and
NIAGARA JET ADVENTURES, LLC as
Owners or Owners *Pro Hav Vice* of a
2013, 33 foot M/V "GONAGO:GO:H I" For
Exoneration from or Limitation of Liability,

Petitioners.

17-CV-0166-LJV-JJM
DECISION & ORDER

---

On February 22, 2017, the petitioners, Devils Hole Jetboat, LLC ("Devils Hole"), and Niagara Jet Adventures, LLC ("Niagara Jet"), brought this action under the Exoneration and Limitation of Liability Act ("Liability Act"), 46 U.S.C. § 30501, *et seq.*, seeking to limit their liability to the claimants, Sarah and Scott Witkowski. Docket Item 1. Before this Court is the Witkowskis' motion to dismiss for lack of subject matter jurisdiction. Docket Item 10.

## BACKGROUND

### I. FACTUAL BACKGROUND

On July 15, 2016, Sarah Witkowski was injured during a jet boat excursion with Niagara Jet. Docket Item 10-1. The excursion is a thrill ride through whitewater rapids near the Devil's Hole whirlpool on the lower Niagara River. *See id.* at 4; *see also* Docket Item 10-3 at 11-14. While on the ride, Sarah "complained about pain in her side" but then told Niagara Jet staff that "she was fine." Docket Item 16-3. Afterwards, however, Sarah went to the emergency room and was diagnosed with a "[c]hest wall contusion." Docket Item 16-4. When Scott Witkowski told the owner of Niagara Jet,

Chris Bohnenkamp, about Sarah's injury, Bohnenkamp agreed to pay Sarah's $120 emergency-room copay and give the Witkowskis a free boating trip. Docket Item 16-5.

On July 22, 2016, Scott sent Bohnenkamp a text message, updating him on Sarah's condition:

> [Sarah] is still in some serious pain. She had blood work done yesterday and we're waiting on results. She has a liver contusion as well as chest . . . . We have been making copays for meds and doctor visits. She's keeping receipts on all of these. Hopefully we can come out and meet and take care of this . . . . We are going on vacation 7/30 to 8/8. Hopefully she's not in this much pain for that.

*Id.* Bohnenkamp replied, "If you're saying there's more and possible [sic] even more on top of [the $120 and free rides,] we will need to file a claim and let our insurance take care of things." *Id.* Scott said that "[he] [would] let [Bohnenkamp] know." *Id.* Bohnenkamp followed up with Scott a few days later to "check in," but Scott did not reply. *Id.*

On August 4, 2016, the Witkowskis' attorney sent Niagara Jet a letter, subject line "Re: Sarah Witkowski v. Niagara Jet Adventures," which stated:

> This is to advise that this office represents Sarah Witkowski with regard to the above-captioned matter.
>
> She suffered serious injuries while riding in one of your boats. At this time, we are requesting that you have no contact with Mrs. Witkowski.
>
> Please forward this letter to your insurance carrier so that they may contact us regarding this incident.

Docket Item 10-2. A week later, the Witkowskis' attorney sent Niagara Jet another letter:

> Kindly be advised that we the undersigned has [sic] been retained to represent Sarah Witkowski with respect to injuries she sustained on your boat on July 15, 2016.

2

> At the current time, we are respectfully requesting that you notify your insurance carrier of this occurrence so that we may deal with them going forward from here.
>
> We are also aware that you have had the conversations with the Witkowskis where you stated that you had reviewed videotape of the incident. By this correspondence we are asking that you retain that video for future use.

Docket Item 10-5.

## II.     PROCEDURAL HISTORY

On September 29, 2016, the Witkowskis commenced a negligence action against Niagara Jet, Docket Item 1 at 2, which was subsequently removed to this Court, Docket Item 10-1 at 6. On February 22, 2017, Devils Hole and Niagara Jet commenced this exoneration action under the Liability Act to limit their liability to the Witkowskis. Docket Item 1. On February 6, 2020, the case was referred to United States Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B). Docket Item 6.

On April 16, 2020, the Witkowskis moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Docket Item 10. The Witkowskis argued that their attorney's letter of August 4, 2016, constituted a "claim in writing" and that the lawsuit to limit liability, commenced more than six months after that letter was received, therefore was untimely under 46 U.S.C. § 185 and Supplemental Admiralty Rule F. Docket Item 10-1 at 1. On May 7, 2020, Devils Hole and Niagara Jet responded, Docket Item 15, and on May 14, 2020, the Witkowskis replied, Docket Item 17.

On July 10, 2020, Judge McCarthy issued a Report and Recommendation ("R&R") finding that the Witkowskis' motion to dismiss should be denied because "the August 4, 2016 letter failed to trigger the six-month deadline under 46 U.S.C. § 30511(a)." Docket Item 26 at 7. First, Judge McCarthy found that the August 4 letter, sent only to Niagara Jet, did not notify Devils Hole of the Witkowskis' claim. *Id.* at 4. Second, as to Niagara Jet, Judge McCarthy found that the letter "fail[ed] to cast blame for the incident [on Niagara Jet], . . . failed to state that the Witkowskis would seek payment from Niagara Jet," and did not "suggest[] a 'reasonable possibility' that the claim could exceed $245,000[, the value of the vessel]."[1] *Id.* at 5-6.

On July 24, 2020, the Witkowskis objected to Judge McCarthy's R&R, Docket Item 29, and on August 18, 2020, Devils Hole and Niagara Jet responded, Docket Item 31.

## **DISCUSSION**

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The Witkowskis object to Judge McCarthy's R&R on the ground that the August 4 letter was written notice sufficient to trigger the six-month deadline, making the exoneration action untimely. Docket Item 29. More specifically, the Witkowskis argue

---

[1] On April 27, 2017, the fair market value of the boat on which Sarah was injured was determined to be $245,000. Docket Item 3-1.

4

that the August 4 letter blamed Niagara Jet for Sarah's injuries and notified Niagara Jet that their claim might exceed the value of the vessel, $245,000. *Id.* at 10, 13.

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objection and response; and the materials submitted to Judge McCarthy. Based on that *de novo* review, the Court accepts and adopts Judge McCarthy's recommendation to deny the Witkowskis' motion to dismiss.

## I.     EXONERATION AND LIMITATION OF LIABILITY ACT

The Liability Act provides that "[t]he owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter . . . within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30511(a). "The statute is a time bar with respect to a vessel owner's filing of a petition for limitation of liability." *Complaint of Morania Barge No. 190, Inc.*, 690 F.2d 32, 33 (2d Cir. 1982) (citing *Deep Sea Tankers, Ltd. v. The Long Branch*, 258 F.2d 757, 772 (2d Cir. 1958), *cert. denied*, 358 U.S. 933, 934 (1959); *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 585 (2d Cir. 1958), *appeal dismissed*, 358 U.S. 30 (1958)). Therefore, a court does not have subject matter jurisdiction over an exoneration action filed after the six-month deadline expires. *Matter of Bullet Services, Inc.*, 422 F. Supp. 3d 784, 786 (E.D.N.Y. 2019) (citing *In re Complaint of Pinand*, 638 F. Supp. 2d, 357, 359 (S.D.N.Y. 2009) ("[T]here is substantial authority for [the] contention that the six[-]month requirement is a condition precedent that a vessel owner must plead and prove, without which an admiralty court lacks subject matter jurisdiction.").

Section 30511(a) does not specify what kind of writing is necessary to trigger the six-month clock. *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994).

"Nevertheless, it is settled that letters sent by claimants to vessel owners may constitute notice of a claim." *Id.* (citing *Spooner*, 253 F.2d at 586; *In re Spearin, Preston & Burrows, Inc.*, 190 F.2d 684, 686 (2d. Cir. 1951); *Complaint of Okeanos Ocean Research Found., Inc.*, 704 F. Supp. 412, 414 (S.D.N.Y. 1989)). To determine whether a claimant's letter provides sufficient notice, the Second Circuit "employ[s] a broad and flexible standard of review—reading letters of notice in their entirety and considering their 'whole tenor.'" *Id.* (quoting *Spooner*, 253 F.2d at 586).

A claimant's letter "must actually inform a shipowner of the claimant's intentions to seek recovery from the owner." *Complaint of N.Y.T.R. Transp. Corp.*, 105 F.R.D. 144, 146 (E.D.N.Y. 1985) (citing *Petition of Anthony O'Boyle No. 1*, 51 F. Supp. 430 (S.D.N.Y. 1943); *Spearin*, 190 F.2d at 684). "Mere knowledge of the event in question, however, is not enough to commence the running of the statutory time period." *Okeanos*, 704 F. Supp. at 414. Accordingly, "a report to the [vessel] owner's insurance company is not sufficient," nor is "a document given to a vessel owner simply listing the extent of damage caused by the vessel and not specifically contending that the owner is liable for the damage." *Id.* (citing *O'Boyle*, 51 F. Supp. at 431; *Petition of J.E. Brenneman Co.*, 157 F. Supp. 295, 297 (E.D. Penn. 1957)). In contrast, a letter informing a shipowner that a claimant may press a claim "over and above the amount of insurance collectible" is sufficient. *See Spooner*, 148 F. Supp. at 586.

In addition, the notice must "reveal a reasonable possibility that the claims may exceed the offending vessel's value." *Orion Marine Construction, Inc. v. Carroll*, 918 F.3d 1323, 1337 (11th Cir. 2019); *see also Morania Barge*, 690 F.2d at 34.

6

## II.     SUFFICIENCY OF NOTICE

### A. The August 4 letter did not blame Niagara Jet.

The Witkowskis contend that the August 4 letter was sufficient because it "put [the p]etitioners on notice that [Sarah] had retained a lawyer, suffered serious harm on their vessel, and placed responsibility for the incident on [the p]etitioners by requesting to contact their insurer."  Docket Item 29 at 11.  In support of this argument, the Witkowskis compare the August 4 letter to a claimant's letter that the Eastern District of New York found to be sufficient in *Complaint of Bayview Charter Boats, Inc.*, 692 F. Supp. 1480 (E.D.N.Y. 1988).[2]  This Court disagrees.

The Court agrees with Judge McCarthy that unlike the *Bayview* letter, which blamed the claimant's injuries on "[Bayview's] gross negligence," the Witkowskis' "August 4 letter does not mention negligence or blame Niagara Jet [ ] for the incident." Docket Item 26 at 4-5.  The fact that Niagara Jet knew "the vessel on which the incident occurred" and that Sarah required medical attention, *see* Docket Item 29 at 11, does not translate into Niagara Jet's knowing that it might face liability for Sarah's injuries, *see Okeanos*, 704 F. Supp. at 414 (knowledge of underlying facts is not sufficient notice).

---

[2] The *Bayview* letter states, in pertinent part:

> Please be advised we represent Joseph Russo in connection with the serious personal injuries he sustained on the above date due to the gross negligence of your employee Jack Goeghan in connection with the operation of an outboard motor boat in the course of his employment with Bayview Charter Boats. Please refer this letter to your insurance and/or legal representative and have them contact the undersigned at their earliest convenience.

*Bayview*, 692 F. Supp. at 1485.

In fact, both letters that the Witkowskis sent to Niagara Jet notified Niagara Jet only that the Witkowskis would file an insurance claim, and that is not enough to trigger the statutory clock. *See id.* In particular, the Witkowskis' second letter stated that they would "deal with [Niagara Jet's insurance] going forward," implying that the Witkowskis would not contact Niagara Jet directly again. *See* Docket Item 10-5. Until then, the Witkowskis and Bohnenkamp had been discussing only reimbursement of medical payments and a free boat ride, Docket Item 16-5, so the statement that the Witkowskis' attorney would deal with the insurance company presumably referred to such reimbursement. Indeed, that appears to be exactly what Bohnenkamp understood when he last communicated with Scott Witkowski. *See id.* ("we will need to file a claim and let our insurance take care of things").

Neither letter threatens a possible claim against Niagara Jet, *see Spooner*, 148 F. Supp. at 586, asserts Niagara Jet's negligence, or advises Niagara Jet to contact its own attorney, *see Bayview*, 692 F. Supp. at 1485. And Bohnenkemp's statement that "this was turning into an incident" does not show that Niagara Jet was on notice of the Witkowskis' forthcoming claim, as the Witkowskis contend. *See* Docket Item 29 at 11. That "incident" could just as well be a contested insurance dispute about medical payments or a simple inconvenience.

The Court also agrees with Judge McCarthy that the subject line of the August 4 letter—"Re: Sarah Witkowski v. Niagara Jet Adventures—does not qualify as sufficient written notice. Docket Item 26 at 5-6. In *Doxsee*—a case the Witkowskis cite for the proposition that "utilizing a potential case caption at the top of the letter [ ] provides notice of a potential lawsuit," Docket Item 29 at 11—the claimant's letter used a similar

8

subject line but also made "specific reference to 'a claim against' Doxsee" and demanded payment for specific itemized medical bills, *Doxsee*, 13 F.3d at 554. The Witkowskis' letter, in contrast, does neither of those things.

In sum, Judge McCarthy was correct in finding that the letter was not sufficient to trigger the six-month deadline.

**B. The August 4 letter did not put Niagara Jet on notice of a claim that might exceed the value of the vessel.**

The Witkowskis also argue that the August 4 letter gave Niagara Jet notice that their claim might exceed the value of the vessel, $245,000, because it identified Sarah's injuries as "serious." Docket Item 29 at 13. According to the Witkowskis, "[t]he tenor of the letters is simply inconsistent with a claim for a simple contusion." *Id.* Although the Court agrees that the letters suggest something more than a minor injury, that does not mean that they raise a claim valued at a quarter million dollars or more. In fact, the letters and their context suggest something far different.

Niagara Jet initially agreed to compensate the Witkowskis with $120 and a free boat ride. Docket Item 16-5. On July 22, 2016, the Witkowskis indicated that they would be seeking more, but nothing from the letters or their context suggests that the Witkowskis would seek over $244,880 more. Scott made light of Sarah's injuries, joking to Bohnenkamp that Sarah should "get a trophy for 1st injury on your boat." *Id.* The two letters and text messages show that at least as of July 22, 2016, less than two weeks before the August 4 letter, the Witkowskis apparently still planned to vacation from July 30 to August 8, 2016. *See id.* And those text messages suggested that the Witkowskis were interested in nothing more than repayment for medical expenses. *See id.* (text

9

message from Scott to Bohnenkamp on July 22, 2016: "We have been making copays for meds and doctor visits. She's keeping receipts on all of these. Hopefully we can come out and meet and take care of this."); *id.* (Bohnenkamp's response: "If you're saying there's more and possible [sic] even more on top of [the $120 and free rides,] we will need to file a claim and let our insurance take care of things."). So read in context, the letters simply advised that the Witkowskis had engaged attorneys to help them pursue such repayment.

Neither the motion to dismiss nor the objection points to anything more suggesting that when Niagara Jet received the letter on August 4, Bohnenkamp knew that Sarah was injured so severely that the Witkowskis would seek more than $245,000 in compensation. Likewise, the Witkowskis offer nothing giving notice of their intent to pursue a negligence claim. Because the Witkowskis and their attorneys never advised Niagara Jet of the extent of Sarah's injuries, how much the Witkowskis would seek in compensation, or even the type of compensation the Witkowskis planned to pursue, the August 4 letter did not raise the "reasonable possibility" that their claim might exceed $245,000. *Orion*, 918 F.3d at 1337.

The Witkowskis also argue that the August 4 letter obligated Niagara Jet "to investigate the severity of the injury." Docket Item 29 at 11. But as Judge McCarthy correctly noted, "a shipowner's duty to investigate arises" only *after* a claimant's letter "reveal[s] a reasonable possibility that the claims may exceed the offending vessel's value." Docket Item 26 at 6. So the Witkowskis' objection puts the cart before the horse: Any duty a shipowner has to investigate damages *after* Liability Act notice is

given does not relieve a claimant of her burden to provide sufficient written notice in the first place.

Therefore, even if the August 4 letter had given Niagara Jet sufficient notice of a potential claim for negligence, that notice still would have been insufficient to trigger the six-month deadline.

## **CONCLUSION**

For the reasons stated above and in the R&R, the Witkowskis' motion to dismiss, Docket Item 10, is DENIED.  The case is referred back to Judge McCarthy for further proceedings consistent with the referral order of February 6, 2020, Docket Item 6.

SO ORDERED.


Dated:     October 30, 2020
           Buffalo, New York


          */s/ Lawrence J. Vilardo*
          LAWRENCE J. VILARDO
          UNITED STATES DISTRICT JUDGE